

January 4, 2023

The Honorable Pamela Pepper
Eastern District of Wisconsin
United States District Court
517 E. Wisconsin Avenue
Milwaukee, WI 53202

**Re: Ashton L. Howard, 21 CR 28**

Dear Judge Pepper:

Please accept this letter as a Sentencing Memorandum on behalf of Mr. Howard. There are several aspects of Mr. Howard's case that I would like to discuss, first starting with the backdrop of this offense, which was under unique and historical circumstances.

1. **Introduction and Context of the Conduct**

As we all know, in May of 2020, George Floyd was killed by police officers, with the death of Mr. Floyd caught on video footage. The officer, Derek Chauvin, was ultimately convicted of murder at trial, most likely because he knelt on Mr. Floyd's neck for a prolonged and excessive period of time - over 9 minutes. The incident shocked not only the nation, but the world, as it was caught on camera. The George Floyd incident also seemed to have brought newfound awareness to the issue of excessive force (police brutality) that had not been meaningfully raised since the beating of Rodney King in 1992 (which also sparked protests and riots); in the summer of 2020, racial justice was one of the major themes and at the forefront of many Americans' minds, aside from the COVID-19 pandemic.

A few months later, on August 23, 2020, Jacob Blake, who had a warrant for his arrest for a third-degree sexual assault charge (he later plead guilty to two counts of Disorderly Conduct), was shot seven times in the back, prior to an attempt to place him into custody. This occurred shortly after 5:00 PM. Regardless of whether such an action by law enforcement was justified, the excessive nature of the shooting sparked immediate protests and riots in the City of Kenosha.

2. **Facts and Evidence as to the Offense**

A news article summarizes the offense and video footage within the article captures the thrown brick. The video can be viewed here: https://www.wisn.com/article/man-accused-of-throwing-brick-at-kenosha-officer-during-protest-faces-federal-charges/35340354.



414.501.5999
414.301.7248
ahmad.aneeq@gmail.com
mindymnolan@gmail.com
edgar.lin.law@gmail.com
111 East Wisconsin Avenue
Suite 1710, Chase Tower
Milwaukee, WI 53202

Case 2:21-cr-00028-PP   Filed 01/04/23   Page 1 of 7   Document 81



The Government's memo discusses the relevant facts, and Mr. Howard will speak to what occurred that night at Sentencing. In summary, Mr. Howard heard of the shooting of Jacob Blake almost immediately after it happened, from a friend. He was in Kenosha that evening and assembled with some acquaintances that he knew along with others. People assembled at the location where Jacob Blake was shot. Rocks were being thrown in the daytime. Once dusk arrived, the crowd became increasingly rowdy and disorderly. Some members of the crowd started throwing bricks, and some parties also had other dangerous objects, such as Molotov cocktails. Mr. Howard did not arrive to scene armed with any weapons. However, right before the offense was committed, Mr. Howard was hit in the back of the head by a brick that was likely intended to be thrown at the officers; this further agitated Mr. Howard and he picked up the same brick and threw it towards the officers. He informs me that he did aim towards the officers in general but did not specifically aim towards the victim in the case or with the intent to hit him in the head. Mr. Howard is remorseful for the pain and suffering he has caused the officer and his family members. Mr. Howard has completed the Acceptance of Responsibility form and plans to address those questions during his Sentencing Hearing.

3. **Persuasive Case Law**

A recent protestor case this Court can look to is *United States v. Jonathan Montanez*, 36 F.4th 824 (8th Cir. 2022), which was a civil disorder situation post George Floyd. In this case, the Eighth Circuit considered on appeal whether the District Court of North Dakota erred in a guidelines calculation applying U.S.S.G. Section 2A2.4 for the offense of obstructing or impeding officers. It found that the guidelines under "Obstructing or Impeding Officers" was appropriate for the conduct of the defendant, which was during a civil disorder type situation in the summer of 2020. As the Eighth Circuit noted, The Sentencing Commission has not specified a base offense guideline for civil disorder offenses under 18 U.S.C. § 231(a)(3). Instead, it directs sentencing courts to follow the cross-reference provision in U.S.S.G. § 2X5.1, which says to "apply the most analogous offense guideline." This is a two-step process; the district court first decides if there are sufficiently analogous guidelines by comparing the elements of the conviction offense to the elements of other offenses. *United States v. Iceman*, 821 F.3d 979, 982 (8th Cir. 2016). Second, if there are multiple sufficiently analogous guidelines, the court makes a fact-bound inquiry to determine which guideline is most analogous to the defendant's conduct. *Id. United States v. Montanez*, 36 F.4th 824, 825 (8th Cir. 2022).

414.501.5999
414.301.7248
ahmad.aneeq@gmail.com
mindymnolan@gmail.com
edgar.lin.law@gmail.com
111 East Wisconsin Avenue
Suite 1710, Chase Tower
Milwaukee, WI 53202

Case 2:21-cr-00028-PP    Filed 01/04/23    Page 2 of 7    Document 81



4. **<u>Plea Agreements and Sentences of Capitol Rioters on January 6th, 2021</u>**

Mr. Howard has pled guilty to a criminal act, and should be sentenced appropriately for his wrongs, but it should be proportional and should be determined under the overall context of the situation. In order to provide the Court with comparable outcomes in recent federal cases involving Civil Disorder, I believe that the Court can look at the sentences given to defendants that were convicted in the Capitol Riots that took place on January 6, 2021.

Regardless of our political interests or inclinations, as lawyers and legal professionals and those sworn to uphold the law, such as law enforcement officers, I think we can all agree that any violent conduct during protests, whether by Democratic or Republican sympathizers, is never appropriate. The destruction that took place during the Kenosha riots was unlawful, just as the raid on the capitol. They are examples of political protestors crossing the line; but nevertheless, I believe they are distinguishable. One was in response to a fellow citizen nearly being killed by law enforcement officers, with the sentiment of racial justice within the criminal justice system. The fight for racial justice is a noble effort that our courts have recognized. The other involved an attempt to overthrow the Government and/or execute certain Congressional leaders, which rises to the level of treason. I believe there is a difference between the two, even if the conduct by an individual may be similar if looked at in a vacuum. I feel that the conduct exhibited by those who perpetrated the Capitol Riots is more aggravated because the raid on the capitol was not only an attack against law enforcement, but on our system of Government and on Democracy itself. The article from Time Magazine (below) sums up the conduct and the sentences of the individuals conducted for their involvement in the attack on the capitol. The ranges vary from 28 months to 63 months in prison.

For the 63-month sentence given in *United States v. Robert Scott Palmer*, 21-CR-328 (United States District Court for the District of Columbia), he was given such a sentence, above the plea agreement range of 46 to 57 months, because of his comments on social media that contradicted him accepting responsibility. One of the main points the Government argued for a hefty prison term at Sentencing was because of his repeated violent assaults on law enforcement for the purpose of overturning a democratic election. The base offense level was 14, under U.S.S.G. Section 2A2.2(a), and the defendant plead guilty to Assaulting an Officer with a Dangerous Weapon, under 18 U.S.C. 111(a). Other counts, such as Obstructing an Officer during Civil Disorder, was dismissed.

414.501.5999
414.301.7248

ahmad.aneeq@gmail.com
mindymnolan@gmail.com
edgar.lin.law@gmail.com

111 East Wisconsin Avenue
Suite 1710, Chase Tower
Milwaukee, WI 53202



Similarly, in *United States v. Devlyn Thompson*, 21-CR-461 (United States District Court for the District of Columbia) the defendant, was sentenced to 46 months in prison. He took part in rioting that lasted nearly 3 hours, during which he assaulted a police officer with a metal baton and threw a speaker at another police officer, which struck another rioter instead, and assisted other crowd members in additional acts of violence against the officers on duty. The base offense level used was 14, also under U.S.S.G. Section 2A2.2(a), and the defendant plead guilty to Assaulting and Officer with a Dangerous Weapon, under 18 U.S.C. 111(a) here as well.

Also, in *United States v. Lonnie Leroy Coffman*, 21-CR-004 (United States District Court for the District of Columbia), was also sentenced to 46 months in prison for possessing many dangerous weapons, including Molotov cocktails, handguns, rifles, shotguns, ammunition, crossbows, machetes, and gas-filled Mason jars. This arsenal of weapons would suggest that he was intending on engaging in mass violence at the Capitol. The base offense level was 18 under U.S.S.G. Section 2K2.1(a).

The Time Magazine article is available here: https://time.com/6133336/jan-6-capitol-riot-arrests-sentences/.

5. **Mitigating Factors for Sentencing**

I think the Court can consider several things here that are mitigating.

**First**, Mr. Howard did not come to the protest armed with a weapon, such as a gun, a baseball bat, or even the brick. His intention was to protest the shooting of Jacob Blake, who was also criminal defendant, and a young black male – someone that Mr. Howard could identify with. Mr. Blake was shot multiple times in the back, which some would say brutally and excessively, and was lucky to be alive after sustaining 7 gunshot wounds at point blank range. His initial intent was based on understandable outrage of a violation of civil rights, which has a lengthy and dark legacy in this country. So, I feel the Court can view this as a mitigating factor. He did not intend to commit crimes that night, and would otherwise not have engaged in such conduct had it not been for the shooting of Jacob Blake.

**Second**, Mr. Howard went to the protest location merely hours after Jacob Blake was shot – when passions were inflamed of those identifying with Jacob Blake, who naturally would be members of the black community, specifically younger black males, some of whom have had run-ins with the law. The proximity in location and time to the Jacob Blake shooting, I feel, is also mitigating. The shooting of Jacob Blake must have hit very close to home for him to have taken to the streets right away.

414.501.5999
414.301.7248
ahmad.aneeq@gmail.com
mindymnolan@gmail.com
edgar.lin.law@gmail.com
111 East Wisconsin Avenue
Suite 1710, Chase Tower
Milwaukee, WI 53202

Case 2:21-cr-00028-PP   Filed 01/04/23   Page 4 of 7   Document 81



There was nothing wrong with his intention and desire to protest what he felt was police brutality – or what we in the legal profession would call excessive force. Our country supports all forms of peaceful protest. That is the right of any American. And perhaps many of us were sympathetic to the shooting of Jacob Blake, as we were with the killing of George Floyd – both black males with criminal histories, who nevertheless did not deserve the excessive force they received. But where our society draws a line is when violence is involved.

**Third**, Mr. Howard threw a brick, but did not use something that would otherwise be more readily established as a deadly weapon, such as a gun or a knife, or a metal pipe, for example. Yes, throwing a brick is a form of violence, as a brick does qualify as a dangerous weapon under the law. However, a brick in the context of a riot is mitigated when compared to a weapon used during an aggravated assault that targets a specific officer. The throwing of the brick took perhaps just a second or two, and its momentary nature is something that is mitigating. It was not specific to the officer that was injured or done in retaliation for an arrest. It was generalized and unfortunately struck the officer in the worst of all possible places. Police wear riot gear for a reason – it is anticipated that objects will be thrown at them, that shield and helmets will be needed, and reasonable force will be necessary to contain the discontent and discord. That is the chaos that is almost inherent in a riot, it comes with the territory. Unfortunately for Mr. Howard and the victim, the victim was seriously injured. I feel that this Court must balance the seriousness of the injury to the victim with the mitigating aspects of Mr. Howard's action in throwing the brick.

**Finally**, this Court can look at 18 U.S. Code Section 3553, and the directive that the Court can consider "aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating guidelines that should result in a sentence different from that described." Mr. Howard's case, in the context of the Jacob Blake riots and protests that summer, provides an explanation. Mr. Howard was charged with Obstruction During a Civil Disorder – not Aggravated Assault, or Assault with Deadly Weapon.

6. **Sentencing Recommendations**

The defense is asking the Court to sentence Mr. Howard under the guidelines for the offense under Section 2A.2.4, which is titled "Obstructing or Impeding Officers," under the general category of Assault. The revised PSR notes that under this calculation, the base offense level is 10. This base offense level, as the commentary section notes, already incorporates that the victim was a governmental officer performing official duties.

414.501.5999
414.301.7248

ahmad.aneeq@gmail.com
mindymnolan@gmail.com
edgar.lin.law@gmail.com

111 East Wisconsin Avenue
Suite 1710, Chase Tower
Milwaukee, WI 53202



The defendant was not charged with, and did not plead to, an assault offense under 18 U.S.C. 111. The conduct of Mr. Howard, in that short time span of a second or two it took to throw the brick, would more so fall under the obstructing or impeding sub-category of the Assault Guidelines. The problem arises due to significant bodily injury sustained, which is not encompassed in Section 2A.2.4. I believe the degree of injury would fall somewhere between bodily injury and serious bodily injury (substantial bodily injury), which would tantamount to a 4-point increase, as noted in Section 2A.2.3.

These are all advisory guidelines, and the Court is tasked with taking all of these factors into account in fashioning an appropriate sentence. I believe the Court can synthesize all the subsections and look at Mr. Howard's case in its overall context.

The big picture here is that this is a protest case with a very unfortunate result for the victim. However, Mr. Howard did not specifically target the officer and did not specifically intend to strike him in the head where he was hit; it was similar to throwing rocks at police during a riot. It was reckless and posed a substantial risk of injury. But I do not believe it rises to the level of aggravated assault. It is not the same as repeatedly bludgeoning an officer or repeated malicious actions on the part of a rioter who raided the capitol for several hours. The criminal conduct occurred in a matter of seconds.

As part of the plea agreement, both counsels anticipated that Mr. Howard had a criminal history category II, which would result in guidelines range of 21-27 months; the PSR notes a criminal history category III, which calls for a range of 24-30 months. Based on all the above, we are requesting that the Court sentence Mr. Howard to **24** months of imprisonment, with a longer supervised release component to follow. The arguments the Government makes in its own Memorandum – that Mr. Howard's pictures posing with guns shows disrespect for the law – is already encompassed in the Sentencing guidelines in terms of criminal history points and is not relevant to the conduct at issue, as it did not involve firearms. Dkt. 77, at 5.

Finally, the Government frames defiance of law enforcement as one of the worst actions imaginable. However, I disagree. Defiance – if in the form of non-violent protest and civil disobedience– is not a crime itself. It can be necessary in bringing any injustice of our laws to the public's awareness. We are a democracy and throughout history, there have been many unjust laws. Civil disobedience may be citable, it may result in arrest, but in the overall history of our country, our society has often upheld the bold actions of those who have protested the government and done so in a peaceful and orderly manner.

414.501.5999
414.301.7248

ahmad.aneeq@gmail.com
mindymnolan@gmail.com
edgar.lin.law@gmail.com

111 East Wisconsin Avenue
Suite 1710, Chase Tower
Milwaukee, WI 53202



Our country permits the First Amendment exercise of Free Speech, but as students of constitutional law, we know that, of course, there are limits. The Civil Rights era involved such defiance as did the summer of George Floyd. Mr. Howard's offense began with outrage over the shooting of a fellow citizen that Mr. Howard identified with. The defiance of law enforcement in the form of peaceful protest was not criminal. Mr. Howard is only here today because the brick he threw did result in substantial injury to the law enforcement officer. But he was not otherwise a rioter, raider, or looter. For his crime, Mr. Howard deserves accountability in the form of imprisonment that is sufficient but no greater than necessary. I would ask the Court to use its wide discretion to take all mitigating factors into account. Thank you for your attention to this matter.

Respectfully submitted,

*Aneeq Ahmad*

Attorney for Ashton L. Howard



414.501.5999
414.301.7248

ahmad.aneeq@gmail.com
mindymnolan@gmail.com
edgar.lin.law@gmail.com

111 East Wisconsin Avenue
Suite 1710, Chase Tower
Milwaukee, WI 53202

Case 2:21-cr-00028-PP    Filed 01/04/23    Page 7 of 7    Document 81